# EXHIBIT 1

Michael G. Abrate (State Bar No. 261543)
Abrate & Olsen Law Group
655 University Avenue, Suite 230
Sacramento, CA 95825
Telephone: (916) 550-2688
Email: mike@abrateandolsen.com

Attorney for Richard Bradley Ng, Petitioner

FILED
Superior Court Of California,
Sacramento
04/20/2021
tbrice
By_____, Deputy
Case Number:
34-2021-00299059

### SUPERIOR COURT OF CALIFORNIA

### COUNTY OF SACRAMENTO

In the Matter of:

THE NG FAMILY TRUST

Case No.

PETITION TO DETERMINE OWNERSHIP OF
ESTATE PROPERTY AND FOR ORDER
AUTHORIZING AND DIRECTING TRUSTEE
TO TRANSFER ESTATE PROPERTY
[Probate Code §850(a)(3)(B) and §17200]

Date: 8/12/2021
Time: 9:00 pm
Dept: 129

RICHARD BRADLEY NG, as successor trustee of the Ng Family Trust, dated April 7, 1987 ("Petitioner" or "Trustee") alleges:

1. On April 7, 1987, Richard Ng and Mary A. Ng executed the Ng Family Trust (hereinafter referred to as "Trust"). The Trust was a Revocable Living Trust.

2. On June 13, 1991, Mary A. Ng purchased an insurance policy on her life through Sun Life Assurance Company of Canada. The beneficiary of the life insurance policy was handwritten as the "Mary Ng Irr Trust DTD 4/7/87." A true and correct copy of the life insurance policy application and beneficiary designation is attached hereto as **Exhibit A**.

3. On August 30, 2011, the Trust was amended and restated in its entirety.

4. On April 19, 2017, the Trust was again amended and restated in its entirety. This attorney drafted the Trust, as amended and restated April 19, 2017. A true and correct copy of the Trust, as amended and restated on April 19, 2017, is attached hereto as **Exhibit B**.

5. On October 29, 2020, Mary A. Ng died a resident of Sacramento County. A true and correct copy of a certificate of death for Mary A. Ng is attached hereto as **Exhibit C**.

1

6.      Mary A. Ng was survived by her husband, two children, and grandchildren.

7.      Upon the death of Mary A. Ng, Richard Ng became the sole trustee of the Trust.

8.      On December 28, 2020, Sun Life Assurance Company of Canada issued a check in the amount of $232,221.58 payable to the "Mary Ng **Irrevocable** Trust, dated April 7, 1987," as the proceeds of the life insurance policy of Mary A. Ng. A true and complete copy of the check issued by Sun Life Assurance Company of Canada is attached hereto as **Exhibit D.**

9.      No Mary Ng Irrevocable Trust has ever been located or is believed to exist.

10.     On January 7, 2021 and January 15, 2021 respectively, Richard Ng was determined by his neurologist and primary care physician to lack the mental capacity to make decisions regarding his finances and medical care. True and correct copies of the determination of incapacity of Richard Ng by his neurologist and primary care physician are attached hereto as **Exhibit E.**

11.     Pursuant to Article Seven, Section 7.1(b) of the Trust, upon the incapacity of Richard Ng, the Petitioner (Richard Bradley Ng) became successor trustee of the Trust with full power to continue its administration. Since January 15, 2021, the Petitioner has been acting as successor trustee of the Trust.

12.     Because of the non-existence of the Mary Ng Irrevocable Trust and therefore the inability to deposit a payment made to a non-existent trust, the Petitioner has requested that Sun Life Assurance Company stop-payment on the check issued on December 28, 2020 and re-issue the check payable to the Ng Family Trust. Sun Life Assurance Company has refused and will not re-issue the check in the absence of a court order.

13.     Probate Code §17005 provides that the proper venue for an action involving a trust is the county in which the principal place of administration of the trust is located. The principal place of administration of a trust is the usual place where the day-to-day activities of the trust are carried on by the trustee or its representative who is primarily responsible for the administration of the trust (Probate Code §17002). The Petitioner lives in Sacramento County. Furthermore, Mary A. Ng was domiciled in Sacramento County upon her death. Accordingly,

PETITION TO DETERMINE OWNERSHIP OF ESTATE PROPERTY

1   the proper County of venue for commencement of this proceeding under Probate Code Section

2   17005(a)(1) is in the County of Sacramento.

3        14.    In *Estate of Heggstad*, 16 Cal.App.4th 942 (1993), the court held that it was not

4   necessary for the Trustor to transfer an asset into the trust by formal transfer documents.  In that

5   case, the Trustor had executed a living trust and declared that all of the assets listed on Exhibit A

6   were held in trust. He failed to transfer a parcel of real property to the trust, but that parcel was

7   listed on Exhibit A.  The *Heggstad* court stated:

8

9            "[A] written declaration of trust by the owner of real property, in
              which he names himself trustee, is sufficient to create a trust in that

10          property, and that the law does not require a separate deed
              transferring the property to the trust."

11

12   *Estate of Heggstad, supra, at 950*.  The court found that the declaration of trust by the owner

13   was sufficient to create a trust; a transfer of the property to the trust by recorded deed was not

14   necessary.

15        15.    In this case it appears that Mary A. Ng intended to name the Ng Family Trust as

16   the beneficiary of the life insurance policy. Instead, she inadvertently named a non-existent,

17   irrevocable trust, as the beneficiary of her life insurance policy. It is illustrative that the date

18   provided on the life insurance beneficiary designation for the Trust is April 7, 1987. This is the

19   same date that the Ng Family Trust was executed by Richard Ng and Mary A. Ng as settlors and

20   trustees. Regardless, it is clear that it was Richard Ng and Mary A. Ng's intention to transfer

21   ownership of this life insurance policy to the Trust after amending and restating the Trust on

22   April 19, 2017.

23        16.    A Schedule of Assets (Schedule A) was attached to the Trust as amended and

24   restated on April 19, 2017. In that Schedule of Assets, the following assets were listed as Trust

25   assets:

26          A).    A one-half (1/2) undivided interest in the real property commonly known

27              as 4840 Kipling Drive, Carmichael, California 95608.

28

PETITION TO DETERMINE OWNERSHIP OF ESTATE PROPERTY

B).    Furniture, furnishings, antiques, jewelry, automobiles, and other personal effects of the settlors located at 4840 Kipling Drive, Carmichael, California 95608.

C).    Wells Fargo Checking/Savings Account (#2166037689)

D)    Fidelity Accounts:

     Y97-086608

     Z47-938636

E).    USAA Savings Account (#45138125)

**F).    Sun Life Assurance Life Insurance Policy (#UB8126853)**

G).    American Armed Forces Mutual Aid Accounts:

     31353XQL

     3153-4X0L

     3153-3X0L

H).    Delaware Life Insurance Company Annuity (#505405600071952).

17.    At the time of Mary A. Ng's death, she and Richard Ng owned all of the assets listed on the Schedule of Assets described above, and it is clear from the terms of the Trust that it was their intention to transfer all assets to the Trust at the time the Trust was amended and restated, and thereafter.

18.    Although Richard Ng and Mary A. Ng indicated their clear intent to create a trust over all of the assets not otherwise passing by operation of law, the Sun Life Assurance Company of Canada life insurance policy had not yet been transferred to the Trust, and inadvertently named a non-existent irrevocable trust as its beneficiary.

19.    Pursuant to Probate Code Section 850(a)(3)(B), the court may make an order determining that property is owned by the trustee of a trust where the trustee has a claim to the property and title is held by another.

20.    Pursuant to *Estate of Heggstad* and Probate Code Sections 850(a)(3)(B), this court should make an order determining that Richard Ng and Mary A. Ng's interest in the following

4

1  asset is the property of the Ng Family Trust and that such interest, as an asset owned by the Ng

2  Family Trust, is subject to administration under its terms:

3          A.) Sun Life Assurance Life Insurance Policy (#UB8126853)

4  21.    Therefore, Petitioner requests that all of Richard Ng and Mary A. Ng's interest in

5  the asset set forth above in paragraph No. 20, be transferred to Petitioner as the Trustee of the

6  Trust, to be distributed according to the terms of the trust declaration.

7  22.    The following will be given notice of this petition:

8          A. Richard Bradley Ng-1207 Beard Way, Carmichael, California 95608;

9          B. Richard Ng- 4840 Kipling Drive, Carmichael, California 95608;

10         C. Richard George Ng- 87 Bottlebrush Court, Oakley, California 94561;

11         D. Lisa Mary Ng- 4840 Kipling Drive, Carmichael, California 95608.

12         E. Andrew Joseph Ng- 20 Millrock Road, New Paltz, NY 12561-1222;

13         F. Brittany Yang Ng-1207 Beard Way, Carmichael, California 95608; and

14         G. Sun Life Assurance Company of Canada- P.O. Box 9106, Wellesley Hills, MA

15         02481-9106.

16  23.   No one has filed a request for Special Notice in this Action.

17  24.   This Petition is in compliance with the Probate Code Section 850 checklist.

18  WHEREFORE, Petitioner requests this court make the following orders:

19  1.    An order determining that the interest in the following asset is an asset of the Ng

20  Family Trust; that Petitioner, as trustee of the Ng Family Trust holds such asset in his capacity

21  as trustee of the Ng Family Trust; and that such asset, as owned by the Ng Family Trust, is

22  subject to administration under the terms of the Ng Family Trust:

23

24         A.) Sun Life Assurance Life Insurance Policy (#UB8126853)

25

26

27

28

PETITION TO DETERMINE OWNERSHIP OF ESTATE PROPERTY

1

2   DATED: _4/18/21_

ABRATE & OLSEN LAW GROUP

3

4   By: _____

5       MICHAEL G. ABRATE
        Attorney for Richard Bradley Ng,
6       Petitioner

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

6

PETITION TO DETERMINE OWNERSHIP OF ESTATE PROPERTY

## VERIFICATION

The undersigned hereby declares as follows:

I, RICHARD BRADLEY NG, am the Petitioner in this matter. I declare that I have read the foregoing "PETITION TO DETERMINE OWNERSHIP OF ESTATE PROPERTY AND FOR ORDER AUTHORIZING AND DIRECTING TRUSTEE TO TRANSFER ESTATE PROPERTY" and the contents thereof, which are true of my own knowledge, except as to the matters therein stated on information and belief, and as to those matters, I believe them to be true.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on ___APRIL 15___, 2021, at ___SACRAMENTO___, ___CALIFORNIA___

___RICHARD BRADLEY NG___

7

PETITION TO DETERMINE OWNERSHIP OF ESTATE PROPERTY

# EXHIBIT A

Part 1 of Application for life insurance to

**Sun Life Assurance Company of Canada**

Branch Office/Agency
App # 0063
Agnt. Clarke

☀ **SunLife of Canada**
A member of Sun Financial Group

Questions 1 through 8 relate to
☑ Proposed Insured
☐ Proposed Insured (child under age 15)

Questions 1A through 6A relate to
☐ Spouse of Insured if Family/ Spouse Insurance is applied for
☐ Applicant/Owner for a child's policy
☐ Second Proposed Insured (Joint Life Policy)

1. NAME:
Mary          A.
First  Ng      Middle  Mrs

1a. NAME:
First          Middle

(b)Are you actively at work on a full-time basis on the date this application is signed?          ☑ Yes ☐ No

NA

Primary          Relationship (to proposed insured)          primary beneficiaries)
Mary Ng Gr. Trust DTD 4/7 /82

13.

14.

15.

16.

17. Owner - (if other than proposed insured)   Address
Name  Mary Ng Gr. Trust DTD 4/7/82   Bennie Ng Trustee
Contingent Owner (if any)          (Relationship to proposed insured)
Name

18. Corrections and Amendments (for Sun Life use only)
PAYMENT TO THE TRUSTEE WILL DISCHARGE SUN LIFE ASSURANCE COMPANY OF CANADA
UND. 14/109 (UL II - C.A.W.L. APP.)

**Edit** NON-MEDICAL (continued)

31. Have you or any proposed insured ever had, been told you have or ever been treated for:

|  |  | Yes | No |
|---|---|---|---|
| (a) | High blood pressure, *chest pain, or heart disorder? | ☐ | ☑ |
| (b) | Cancer, tumor, enlarged glands or enlarged lymph nodes? | ☐ | ☑ |
| (c) | *Ulcer, *colitis, liver or *digestive disorder? | ☐ | ☑ |
| (d) | *Diabetes or sugar in the urine? | ☐ | ☑ |
| (e) | *Asthma, *shortness of breath, *chronic cough or *emphysema? | ☐ | ☑ |
| (f) | Urinary, kidney or bladder disorder? | ☐ | ☑ |
| (g) | Arthritis, gout, back pain or muscle disorder? | ☐ | ☑ |
| (h) | *Epilepsy, *fainting episodes, mental or nervous disorder? | ☐ | ☑ |
| (i) | Anemia or other blood disorder? | ☐ | ☑ |
| (j) | Have you ever been diagnosed or treated by a member of the medical profession for Acquired Immune Deficiency Syndrome (AIDS) or AIDS related complex (ARC)? | ☐ | ☑ |

32. Have you or any proposed insured (a) Regularly used amphetamines, marijuana, cocaine or other narcotics except as prescribed by a doctor?   ☐ Yes ☑ No
    (b) *Been treated or counseled for alcoholism or drug abuses? If "Yes," provide full details.   ☐ Yes ☑ No
    (c) *Been advised to reduce your consumption of alcohol?   ☐ Yes ☑ No

33. Do you or any proposed insured have health symptoms or complaints for which a physician has not been consulted or treatment received? For example, persistent fever, unexplained weight loss, loss of appetite, pain or swelling, etc,. If "Yes," give details above.   ☐ Yes ☑ No

I/We understand and agree that:

1. The information provided in this Application Part I (and Part II Medical, if required) is the basis for and becomes part of any insurance issued as a result of this Application.
2. No insurance agent or medical examiner has the authority to make or modify a Sun Life policy, to decide whether anyone proposed for insurance is an acceptable risk or to waive any of Sun Life's rights or requirements.
3. In accepting a policy, I also accept any corrections and amendments made by Sun Life. Any change in plan, amount, benefits, age at issue or classification cannot be made without my written consent.
4. No insurance requested in this Application will be effective until a policy is issued and Sun Life has received the balance of any premiums owed, except as provided in the Temporary Life Insurance Agreement numbered the same as this Application.

I/We declare that the information provided in this Application is complete and true to the best of my/our knowledge and belief and that it is correctly recorded.

I/We authorize any physician, hospital or other medically related facility, insurance company, the Medical Information Bureau or other organization or person that has any records or knowledge of me/us or my/our health to give such information to Sun Life Assurance Company of Canada or its reinsurers. I/We acknowledge receipt of copies of the prenotifications relating to investigative consumer reports and the MIB, Inc. (Medical Information Bureau). This authorization is valid for thirty (30) months from its date. A photocopy of this authorization shall be as valid as the original.

Signed at: _San Francisco_    _CA_    on _13 June_ 19_91_
    City               State

Ⓧ _Mary C. Ng_      X _Bennie Ng Trustee_
Signature of proposed insured if other than applicant
(not required if under age 15)      Signature of applicant/initial owner

_Bruce E. Carbo_
Signature of proposed insured's spouse/
second proposed insured (Joint Life Policy)      Signature of witness/agent
(licensed resident where required)

# EXHIBIT B

# 2017 AMENDMENT AND RESTATEMENT OF THE NG FAMILY TRUST

## TABLE OF CONTENTS

**Article One. Creation of Trust** ........................................................................... 1
| | | |
|---|---|---|
| 1.1 | Preamble | 1 |
| 1.2 | Names of Trusts | 1 |
| 1.3 | Statement of Intent | 1 |
| 1.4 | Effective Date | 2 |
| 1.5 | Identification of Living Children | 2 |
| 1.6 | No Deceased Children | 2 |
| 1.7 | Definitions of Child, Children, and Issue | 2 |

**Article Two. Trust Estate** ..................................................................................... 3
| | | |
|---|---|---|
| 2.1 | Definition of Trust Estate | 3 |
| 2.2 | Character of Trust Assets | 3 |
| 2.3 | Aggregate Community Property Division | 3 |
| 2.4 | Additions to Trust | 4 |

**Article Three. Rights and Powers of Settlors** ................................................. 4
| | | |
|---|---|---|
| 3.1 | Power of Revocation and Amendment While Both Settlors Are Living | 4 |
| 3.2 | Power of Revocation and Amendment After Death of Deceased Settlor | 4 |
| 3.3 | Method of Revocation or Amendment | 5 |
| 3.4 | Delivery of Property After Revocation | 5 |
| 3.5 | Trustee's Retention of Assets on Revocation | 5 |
| 3.6 | Exercise of Rights and Powers of Settlors By Others | 6 |

**Article Four. Distributions During Settlors' Joint Lives** .............................. 7
| | | |
|---|---|---|
| 4.1 | Payment of Income During Settlors' Joint Lives | 7 |
| 4.2 | Distributions of Principal During Settlors' Joint Lives | 7 |
| 4.3 | Distributions of Principal at Request of Settlors | 7 |
| 4.4 | Settlors' Obligation for Community Property Distributed | 8 |
| 4.5 | Distributions for Incapacitated Settlor | 8 |
| 4.6 | Trustee's Power to Make Gifts at Direction of Settlors | 9 |

**Article Five. Distributions After Deceased Settlor's Death** ......................... 9
| | | |
|---|---|---|
| 5.1 | Payment of Death Taxes, Debts, and Expenses on Statement From Personal Representative | 9 |
| 5.2 | Trustee's Power to Defer Division or Distribution | 9 |
| 5.3 | Trust Estate Allocated to Power of Appointment Trust | 10 |
| 5.4 | Intention That Disposition Be Eligible for Marital Deduction | 10 |
| 5.5 | Disclaimer of Property | 11 |

**Article Six. Dispositive Provisions of Trusts Created After Deceased Settlor's Death** ........ 11

6.1     Power of Appointment Trust ................................................................ 11
6.2     Disposition of Disclaimer Trust Until Death of Surviving Settlor .............................. 13
6.3     Disposition of Disclaimer Trust on Death of Surviving Settlor ................................. 13
6.4     Separate Share Trust for Issue ............................................................. 14
6.5     Spendthrift Clause ......................................................................... 16
6.6     Administration of Generation-Skipping Trusts ............................................... 16

**Article Seven. Trustee** ......................................................................... **19**
7.1     Successor Trustees ......................................................................... 19
7.2     General Trustee-Related Provisions ........................................................ 19

**Article Eight. Concluding Provisions** ........................................................... **31**
8.1     Perpetuities Savings Clause ............................................................... 31
8.2     Simultaneous Death ........................................................................ 31
8.3     Survivorship Requirement .................................................................. 31
8.4     No-Contest Clause ......................................................................... 32
8.5     Definition of Deceased Settlor and Surviving Settlor ...................................... 32
8.6     Definition of Education ................................................................... 32
8.7     Number and Gender ......................................................................... 33
8.8     Captions .................................................................................. 33
8.9     Severability Clause ....................................................................... 33
8.10    California Law to Apply ................................................................... 33
8.11    Distribution to Issue ..................................................................... 33

**Article Nine. Signature and Execution** ......................................................... **34**
9.1     Execution ................................................................................. 34

# 2017 AMENDMENT AND RESTATEMENT OF THE NG FAMILY TRUST

## ARTICLE ONE. CREATION OF TRUST

### 1.1 Preamble

Richard Ng and Mary A. Ng are the settlors of the Ng Family Trust created under that certain declaration of trust dated April 7, 1987, as amended and restated on August 30, 2011. Richard Ng and Mary A. Ng are the trustees duly appointed and acting under and by the terms of that declaration of trust. In Section 3.1 of that declaration of trust, the settlors reserved the right to amend the trust, in the following language:

> *"During the joint lifetimes of the settlors, any trust created by this instrument may be revoked or terminated, in whole or in part, by either settlor as to any separate and quasi-community property of that settlor and any community property of the settlors. Any trust created by this instrument may be modified or amended by either settlor acting alone as to any separate and quasi-community property of that settlor, and by both settlors acting jointly as to any community property of the settlors."*

The settlors now wish to exercise their right of amendment and, to that end, do hereby amend that declaration in the terms set forth in this amended and restated trust. The trustees hereby consent to the terms of this amended and restated declaration. The parties agree that upon execution of this instrument, that declaration of trust shall be replaced in whole, and the terms of this amended and restated declaration of trust shall supersede the terms of that declaration of trust for all purposes. The settlors and the trustees confirm that all assets currently titled in the name of the trustees of the Ng Family Trust shall continue to be held by the trustees as trust assets of the amended and restated trust.

### 1.2 Names of Trusts

The trusts created by this instrument shall be known collectively as the Ng Family Trust, and each separate trust created under this instrument shall be identified by the name of the settlor

or settlors whose property is held in that separate trust and adding the name or designation of that separate trust as it appears in the appropriate section of this instrument.

1.3    Statement of Intent

1. *Care of Settlors.* To provide for our care and maintenance as long as either of us is living;

2. *Avoid Conservatorship.* To facilitate management of the trust property in the event of the incapacity of one or both of us;

3. *Transfer Property at Death.* To facilitate transfer of the trust property upon our deaths; and

4. *Tax Planning.* To provide opportunities for reducing or postponing taxes that might be imposed as a result of our deaths.

1.4    Effective Date

This declaration shall be effective immediately on execution by the settlors-trustees.

1.5    Identification of Living Children

The settlors have two (2) living children, as follows:

| Name | Date of Birth |
|---|---|
| Richard George Ng | October 24, 1955 |
| Lisa Mary Ng | June 25, 1960 |

1.6    No Deceased Children

The settlors have no deceased children.

1.7    Definitions of Child, Children, and Issue

As used in this instrument, the terms "child" and "children" refer to natural children and children who have been legally adopted by the parent or parents from or through whom their right to inherit or to take is determined or derived, and the term "issue" refers to all lineal descendants of all generations, with the relationship of parent and child at each generation being determined by the definitions of "child" and "children" set forth in this instrument.

## ARTICLE TWO. TRUST ESTATE

### 2.1   Definition of Trust Estate

All property subject to this instrument from time to time is referred to as the "trust estate" and shall be held, administered, and distributed as provided in this instrument. The trustee shall hold, administer, and distribute the property described in the Schedule of Community Property Assets (which are attached hereto and made a part of this trust instrument), any other property that may be hereafter subject to this trust, and the income and proceeds attributable to all such property, in accordance with the provisions of this instrument.

### 2.2   Character of Trust Assets

All community property of the settlors transferred to this trust, and the proceeds of all such property, shall continue to be community property under the laws of California, subject to the provisions of this instrument. All separate and quasi-community property shall remain the separate or quasi-community property, respectively, of the contributing settlor.

### 2.3   Aggregate Community Property Division

The Settlors currently own and on the death of the deceased settlor may own qualified retirement plan accounts and other assets that are not included in the trust property. The surviving settlor may elect to receive any or all or the qualified retirement plan accounts or other assets not held in this trust as a part of his or her share of the community property estate, provided that the deceased settlor's share of the community property shall include other

community property assets equal in value to the qualified retirement plan accounts or other assets selected by the surviving settlor. For purposes of this division, all assets shall be valued on the date or dates of distribution. This aggregate property division shall be accomplished by the following:

(a)   The surviving settlor shall make the election under this section by a written instrument delivered to the trustee then serving under this declaration. The surviving settlor shall deliver the written election to the trustee at any time proper to the division of the community assets under the provisions of this declaration, and the election shall be irrevocable. Such written instrument is not required if the sole trustee is the surviving settlor. The trustee then serving shall be authorized to defer the division under this declaration for such time as is reasonably necessary for the surviving settlor to exercise the election under this section.

(b)   The trustee shall select the assets that shall constitute the deceased settlor's interest in the community property estate, including the community property assets held under this declaration equal in value to the qualified retirement plan accounts or other assets selected by the surviving settlor.

2.4   Additions to Trust

From time to time, the trustee may accept additions to this trust from any source. All such additions shall become a part of the trust estate and shall be held, administered, and distributed in accordance with the terms of this instrument. That additional property shall become part of the trust estate upon written acceptance of it by the trustee. Any additions to the trust shall be made by designating in writing the property to be added. However, the titling of any account, deed, or similar asset in the name of the trustee, as trustee of this trust, or any alternate or successor trustee acting under this instrument, shall be deemed to be a transfer to this trust. Any designation by a third party, whether by will, deed, account title designation, or similar transfer, shall also be a transfer to the trust estate.

## ARTICLE THREE. RIGHTS AND POWERS OF SETTLORS

3.1   Power of Revocation and Amendment While Both Settlors Are Living

During the joint lifetimes of the settlors, any trust created by this instrument may be revoked or terminated, in whole or in part, by either settlor as to any separate and quasi-community property of that settlor and any community property of the settlors. Any trust created by this instrument may be modified or amended by either settlor acting alone as to any separate and quasi-community property of that settlor, and by both settlors acting jointly as to any community property of the settlors.

3.2   Power of Revocation and Amendment After Death of Deceased Settlor

After the death of the deceased settlor, the surviving settlor may at any time amend, revoke, or terminate, in whole or in part, any trust created by this instrument other than the Disclaimer Trust, which shall be irrevocable and not subject to amendment. After the death of the surviving settlor, none of the trusts created by this instrument may be amended, revoked, or terminated.

3.3   Method of Revocation or Amendment

Any amendment, revocation, or termination of any trust created by this instrument shall be made by written instrument signed by both settlors or by the settlor making the revocation, amendment, or termination, and delivered to the trustee. If the instrument making the revocation, amendment, or termination is signed by only one settlor and the other settlor is living at that time, a copy of the instrument making the amendment, revocation, or termination shall also be delivered to the other settlor. An exercise of the power of amendment substantially affecting the duties, rights, and liabilities of the trustee shall be effective only if agreed to by the trustee in writing. The method of amendment and revocation provided in this section is not exclusive.

3.4   Delivery of Property After Revocation

After any revocation or termination with respect to community property, the trustee shall promptly deliver the designated property to the settlors. Unless otherwise provided in the

revocation of this trust instrument, any community property so returned shall continue to be the community property of the settlors. After any revocation or termination with respect to separate or quasi-community property, the trustee shall promptly deliver the designated property to the contributing settlor.

### 3.5   Trustee's Retention of Assets on Revocation

In the event of any revocation of all or part of the trust, the trustee shall be entitled to retain sufficient assets to reasonably secure the payment of liabilities the trustee has lawfully incurred in administering the trust and any fees that have been earned by the trustee, until such time as those liabilities have been discharged and fees paid, unless the settlors indemnify the trustee against loss or expense.

### 3.6   Exercise of Rights and Powers of Settlors By Others

Any right or power that either settlor could exercise personally under the terms of this instrument, excluding any power to amend, revoke, or terminate any trust created by this instrument, may be exercised for and on behalf of that settlor by any attorney in fact who, at the time of the exercise, is duly appointed and acting for that settlor under a valid and enforceable durable power of attorney executed by that settlor under the Uniform Durable Power of Attorney Act, or any successor statute, or, if there is no such attorney in fact, by a duly appointed and acting conservator of that settlor, after petition to the court in accordance with California Probate Code Section 2580, or any successor statute. The power to amend, revoke, or terminate any trust created by this instrument is personal to the settlors and may not be exercised by any other person or entity.

## ARTICLE FOUR. DISTRIBUTIONS DURING SETTLORS' JOINT LIVES

4.1     Payment of Income During Settlors' Joint Lives

So long as both settlors are living, the trustee shall pay the net income of the trust as specified in this section.

    (a)     Community Property

      The trustee shall pay to or apply for the benefit of the settlors, or either of them, all of the net income from the trust community property, in monthly or other convenient installments (but not less often than annually) as the settlors, or either of them, and the trustee may agree on from time to time.

    (b)     Separate and Quasi-Community Property

      The trustee shall pay to or apply for the benefit of a settlor whose separate property or quasi-community property comprises part of the trust estate all of the net income from that property, in monthly or other convenient installments (but not less often than annually) as that settlor and the trustee may agree on from time to time.

4.2     Distributions of Principal During Settlors' Joint Lives

So long as both settlors are living, the trustee shall distribute principal of the trust, at any time or times, as specified in this section.

    (a)     Community Property

      The trustee shall distribute to or apply for the benefit of the settlors, or either of them, as much of the principal of the community property of the trust as the trustee, in the trustee's discretion, deems necessary for the comfort, welfare, and happiness of the settlors, or either of them.

    (b)     Separate and Quasi-Community Property

      The trustee shall distribute to or apply for the benefit of either settlor as much of the principal of the separate and quasi-community property of that settlor as the trustee, in the trustee's discretion, deems necessary for the comfort, welfare, and happiness of that settlor.

    (c)     Consideration of Other Resources When Distributing Principal

      In exercising discretion under subsections (a) and (b), the trustee shall give the consideration that the trustee deems proper to all other income and resources then readily available for use by the settlor or settlors, as the case may be, for the stated

purposes and that are then known to the trustee. All decisions of the trustee regarding such payments, if any, are within the trustee's discretion.

4.3   <u>Distributions of Principal at Request of Settlors</u>

So long as both settlors are living, the settlors shall have the right to withdraw principal of the trust, at any time or times, as specified in this section.

(a)   <u>Community Property</u>

The trustee shall distribute to the settlors, or either of them, such amounts from the principal of the community property of the trust, up to the whole thereof, as the settlors, or either of them, may request of the trustee in writing.

(b)   <u>Separate and Quasi-Community Property</u>

The trustee shall distribute to a settlor whose separate or quasi-community property comprises part of the trust estate as much of the principal of that property, up to the whole thereof, as that settlor may request of the trustee in writing.

4.4   <u>Settlors' Obligation for Community Property Distributed</u>

Any payment of income or principal from the trust community property to or for the benefit of the settlors, or either of them, shall remain the community property of the settlors. A settlor who receives any such payment shall have the same obligations respecting that property that he or she would have with respect to all community property generally.

4.5   <u>Distributions for Incapacitated Settlor</u>

(a)   If, at any time, a settlor is unable to request the trustee to distribute the net income or principal of the trust, that settlor's right to request may be exercised by an agent:

(i)   acting for that settlor under a valid and enforceable durable power of attorney; or

(ii)   acting for that settlor under a valid advance health care directive or comparable instrument.

Any agent's authority will be limited by the terms of the instrument governing the agent's authority.

(b)   When an incapacitated settlor has a right to distributions on request, the trustee may make distributions as the trustee deems necessary for that settlor without receiving a request.

### 4.6   Trustee's Power to Make Gifts at Direction of Settlors

So long as both settlors are living, the trustee shall have the power to make gifts, as specified in this section:

(a)   Community Property

The trustee shall distribute such sums of community property trust principal to such person or persons who are the natural objects of the settlors' bounty, as the settlors, acting jointly, may direct in writing.

(b)   Separate and Quasi-Community Property

The trustee shall distribute such sums of trust principal that is the separate property or the quasi-community property of a settlor to such person or persons who are the natural objects of that settlor's bounty, as that settlor may direct in writing.

(c)   Incapacity of a Settlor

In the event that a settlor is unable to direct the trustee in writing under this section due to incapacity, such direction may be made on the settlor's behalf by a duly authorized attorney in fact acting under a valid durable power of attorney executed by the settlor under the Uniform Durable Power of Attorney Act (or successor statute); provided, however, that the amount of such gifts pursuant to the direction of an attorney in fact must be in accordance with the settlors' pattern of giving in three of the five years preceding the date of the gift, or if a settlor were incapacitated during any portion of the preceding five years, the settlors' pattern of giving in three of the five years prior to a determination of incapacity.

## ARTICLE FIVE. DISTRIBUTIONS AFTER DECEASED SETTLOR'S DEATH

### 5.1   Payment of Death Taxes, Debts, and Expenses on Statement From Personal Representative

After the deceased settlor's death, on receipt by the trustee of a written statement from the personal representative of the deceased settlor's estate requesting that the trustee pay death taxes, debts, and expenses (as defined in Article Eight), with respect to any property in the deceased settlor's estate, the trustee shall pay, either directly or to the personal representative, any amounts requested by the personal representative for those purposes, in the manner specified

below. The trustee may rely on the personal representative's statement and shall not be liable for any act or omission by the personal representative in protesting or failing to protest the legality, propriety, or amount of the death taxes, debts, or expenses. If there is no personal representative, the trustee shall make the payments directly. Payments of debts and expenses shall be made by the trustee from the trust estate. All death taxes payable by reason of the death of the deceased settlor shall also be paid by the trustee from the trust estate. Payments under this section on the death of the deceased settlor shall be made only out of (1) the deceased settlor's separate property, if any, (2) the deceased settlor's one-half (1/2) interest in the settlors' community property, and (3) the deceased settlor's one-half (1/2) interest in the deceased settlor's quasi-community property, and shall not be made from the surviving settlor's property. Any death taxes that are attributable to a disclaimer of property under this instrument by the surviving settlor shall be paid from the Disclaimer Trust.

5.2   Trustee's Power to Defer Division or Distribution

Whenever the trustee is directed to divide any part of the trust estate or distribute trust assets on the death of either settlor, the trustee may, in the trustee's discretion, defer actual division or distribution for such reasonable period of time as is needed to effectively identify, take possession of, value, divide, and distribute the assets of the trust. During this time of deferral, the trustee may manage the trust assets through a single administrative trust. The ability of the trustee to delay division or distribution shall not affect the vesting of interests, which shall be as of the date of death.

5.3   Trust Estate Allocated to Power of Appointment Trust

On the deceased settlor's death, the remaining trust estate shall be held, administered, and distributed according to the terms of the Power of Appointment Trust, as set forth in Article Six.

### 5.4   Intention That Disposition Be Eligible for Marital Deduction

The settlors intend that the disposition of the trust estate set forth in the preceding section (to the extent that it provides for disposition of the deceased settlor's property) be eligible for the federal estate tax marital deduction, and this instrument shall be construed accordingly.

### 5.5   Disclaimer of Property

Any property or portion of property that is disclaimed by the surviving settlor shall be held, administered, or distributed according to the terms of the Disclaimer Trust, as set forth in Article Six.

## ARTICLE SIX. DISPOSITIVE PROVISIONS OF TRUSTS CREATED AFTER DECEASED SETTLOR'S DEATH

### 6.1   Power of Appointment Trust

The trustee shall hold, administer, and distribute the assets of the Power of Appointment Trust as follows:

(a)   Payment of Income

The trustee shall pay to or apply for the benefit of the surviving settlor, so long as the surviving settlor lives, the entire net income of the trust, in monthly or other convenient installments agreed on by the surviving settlor and the trustee, but not less often than annually. In determining the net income of the trust distributable to the surviving settlor, the trustee shall include all income that must be considered as income in order for the trust to qualify for the marital deduction under the federal estate tax law, and shall make no deductions from gross income that would prevent the trust from qualifying for that marital deduction, notwithstanding any contrary provisions of this instrument or any applicable provisions of state law. The settlors intend that the surviving settlor, as the beneficiary of a marital deduction trust, shall have substantially that degree of beneficial enjoyment of the trust during his or her lifetime that the principles of the law of trusts accord to a person who is unqualifiedly designated as the life beneficiary of a trust, and the trustee shall not exercise the trustee's discretion in a manner that is not in accord with this expressed intention. The settlors further intend that the trust produce for the surviving settlor during his or her lifetime the income, or that the surviving settlor shall have the benefit of the trust property, as is consistent with the value of the trust property and with its preservation.

(b)   Discretionary Payment of Principal by Trustee

At any time or times during the trust term, the trustee shall pay to or apply for the benefit of the surviving settlor so much of the principal of the trust as the trustee deems proper for the comfort, welfare, and happiness of the surviving settlor. In exercising discretion, the trustee shall give the consideration that the trustee deems proper to all other income and resources that are then known to the trustee and that are readily available to the surviving settlor. All decisions of the trustee regarding payments under this subsection, if any, are within the trustee's discretion.

(c)   Right of Surviving Settlor to Withdraw Principal

The trustee shall pay to the surviving settlor as much of the trust principal, up to all of it, as the surviving settlor may from time to time request in a signed writing delivered to the trustee.

(d)   General Power of Appointment

On the death of the surviving settlor, the trustee shall distribute all property subject to the trust (including the trust principal, all net income then held by the trustee, and all income then accrued but not collected by the trustee) to any entity or entities, person or persons, and on any trust, terms and conditions, or to or in favor of the estate of the surviving settlor, as the surviving settlor may direct by will, but only if that will expressly refers to and indicates an intention to exercise this power of appointment. The trustee may rely on any instrument admitted to probate (or in any summary administration proceeding) as the last will of the surviving settlor in carrying out the terms of the power of appointment and shall not be liable for any good-faith act in reliance on that will, even if for any reason it is later determined to be invalid with respect to its purported exercise of this power of appointment. If no such probate or summary estate proceeding is otherwise required or instituted, the trustee may rely on any will that on its face appears to be the last validly executed will of the surviving settlor. If the trustee receives no notice of the existence of a will of the surviving settlor within six (6) months after the death of the surviving settlor the trustee may distribute the trust assets and income as though this power of appointment had not been exercised and shall in that event be conclusively presumed to have acted in good faith, even if a valid will is thereafter discovered.

(e)   Payment of Death Taxes, Debts, and Expenses

On the death of the surviving settlor and subject to any power of appointment exercised by him or her, the trustee may, in the trustee's discretion, pay out of the income or principal (or partly from each) of the Power of Appointment Trust, without proration, the death taxes, debts, and expenses (as defined in Article Eight) arising on the death of the surviving settlor.

(f)   Payment of Federal Estate Taxes

The trustee shall determine from the personal representative of the estate of the surviving settlor the amount of the federal estate tax allocable to the property of the trust by reason of Internal Revenue Code Section 2207 and shall set aside a portion of

the trust principal for the purpose of paying that tax upon written demand of the personal representative.

(g)   Default Provision

If any of the property subject to the power of appointment of the surviving settlor is not effectively appointed by him or her, that property, after payment of any taxes, debts, and expenses pursuant to the applicable provisions of this instrument, shall be distributed in the manner specified in Section 6.3 applicable to the remainder provisions of the Disclaimer Trust.

6.2   Disposition of Disclaimer Trust Until Death of Surviving Settlor

During the lifetime of the surviving settlor, the trustee shall hold, administer, and distribute the assets of the Disclaimer Trust as follows:

(a)   Payment of Income

Except as limited by the Spendthrift Clause contained in this instrument, the trustee shall pay to or apply for the benefit of the surviving settlor the entire net income of the trust, in monthly or other convenient installments agreed on by the surviving settlor and the trustee, but not less often than annually. Any trust income not distributed pursuant to the trustee's discretion contained in the Spendthrift Clause shall be accumulated and added to principal.

(b)   Discretionary Payment of Principal by Trustee

At any time or times during the trust term, the trustee shall pay to or apply for the benefit of the surviving settlor so much of the principal of the trust as the trustee deems proper to pay the reasonable expenses of the surviving settlor for his or her health, education, support, and maintenance. In exercising discretion, the trustee shall give the consideration that the trustee deems proper to all other income and resources that are known to the trustee and that are readily available to the surviving settlor for use for these purposes. All decisions of the trustee regarding payments under this subsection, if any, are within the trustee's discretion.

6.3   Disposition of Disclaimer Trust on Death of Surviving Settlor

On the death of the surviving settlor, the trustee shall divide the assets of the Disclaimer Trust as follows:

(a)   A share of forty (40) percent of the total trust property for Richard George Ng ("Richard George") if he survives the surviving settlor or, if he does not survive the surviving settlor but leaves issue who survive the surviving settlor, for his issue.

(b)  A share of forty (40) percent of the total trust property for Lisa Mary Ng ("Lisa") if she survives the surviving settlor or, if she does not survive the surviving settlor but leaves issue who survive the surviving settlor, for her issue.

(c)  A share of ten (10) percent of the total trust property for Richard Bradley Ng ("Richard Bradley") if he survives the surviving settlor or, if he does not survive the surviving settlor but leaves issue who survive the surviving settlor, for his issue.

(d)  A share of ten (10) percent of the total trust property for Andrew Joseph Ng ("Andrew") if he survives the surviving settlor or, if he does not survive the surviving settlor but leaves issue who survive the surviving settlor, for his issue.

(e)  If any child or grandchild identified above predeceases the surviving settlor without leaving issue who survive the surviving settlor, the trustee shall divide the trust property into shares for the remaining children and grandchildren who survive the surviving settlor in proportion to the respective interests of the remaining shares in the trust assets.

(f)  Each share (if any) created for a child or grandchild identified above who survives the surviving settlor shall be distributed outright to that child or grandchildren.

(g)  Each share (if any) created for the issue of a deceased grandchild shall be divided among the then-living issue of that grandchild in the manner provided in California Probate Code Section 240, as defined in the article entitled "Concluding Provisions" of this instrument, with each individual issue receiving his or her portion of the share outright if he or she has reached the age of twenty-five (25) years at the time of the surviving settlor's death. However, if an individual is under the age of 25 years at that time, his or her portion of the share shall be held, administered, and distributed by the trustee in a separate trust for that individual issue according to the terms set forth in Article Six applicable to the Separate Share Trust for Issue.

(h)  If none of the beneficiaries identified above are alive at the surviving settlor's death, and if none of the beneficiaries identified above leave issue who are alive at the surviving settlor's death, the Disclaimer Trust property shall be distributed outright as follows: one half (1/2) to the heirs of the deceased settlor and one half (1/2) to the heirs of the surviving settlor.

6.4   Separate Share Trust for Issue

Each share or portion of the trust estate, or of the trust property of any other trust created by this trust instrument, that is allocated to a Separate Share Trust for Issue for the benefit of the beneficiary (as defined in subsection (a) below) when that beneficiary is under the age of twenty-

five (25) years shall be held, administered, and distributed by the trustee as a separate trust, as follows:

    (a)   <u>Beneficiaries</u>

        The beneficiary of this trust is the individual issue of a deceased grandchild of the settlors or the individual issue of the settlors, as the case may be, for whom this trust is created pursuant to the other provisions of this trust instrument.

    (b)   <u>Discretionary Payments</u>

        At any time or times during the trust term, the trustee shall pay to or apply for the benefit of the beneficiary as much of the net income and principal of the trust as the trustee deems proper for the health, education, support, and maintenance of that beneficiary. In exercising discretion, the trustee shall give the consideration that the trustee deems proper to all other income and resources that are known to the trustee and that are readily available to the beneficiaries for use for these purposes. All decisions of the trustee regarding payments under this subsection, if any, are within the trustee's discretion. The trustee shall accumulate and add to principal any net income not distributed.

    (c)   <u>Distribution on Termination</u>

        The trust shall terminate on the beneficiary reaching twenty-five (25) years of age or on the death of the beneficiary, whichever occurs first. If the trust terminates on the beneficiary reaching twenty-five (25) years of age, the trustee shall distribute the trust property (including all income then accrued but uncollected and all net income then remaining in the hands of the trustee) to the beneficiary outright. If the trust terminates on the death of the beneficiary, the trustee shall distribute the trust property to the then-living issue of the beneficiary in the manner provided in California Probate Code Section 240, as defined in the article entitled "Concluding Provisions" of this instrument, or if the beneficiary has no issue then living, to the then-living issue of that deceased grandchild who is the ancestor of the beneficiary, with those issue taking this trust property in the manner provided in California Probate Code Section 240, as defined in the article entitled "Concluding Provisions" of this instrument.

    (d)   <u>Final Disposition</u>

        If the trust property is not completely disposed of by the preceding provisions, the undisposed-of portion shall be distributed outright as follows: one half (1/2) to the heirs of the deceased settlor and one half (1/2) to the heirs of the surviving settlor.

6.5    Spendthrift Clause

The interests of the beneficiaries under this instrument are not transferable by voluntary or involuntary assignment or by operation of law, and shall be free from the claims of creditors and from attachment, execution, bankruptcy, and other legal process, to the maximum extent permitted by law. If any such transfer is made or attempted by or against any beneficiary, all further trust payments of income or principal or both to that beneficiary (and any right of that beneficiary to such payments) shall be suspended for a period of time or indefinitely (but in no case for longer than the term of the trust) as the trustee determines. In lieu of payments to that beneficiary, the trustee may apply so much of the trust income or principal or both to which the beneficiary would otherwise be entitled as the trustee deems necessary for the beneficiary's education and support. All trust income (to which the beneficiary would otherwise be entitled) not so applied shall in the discretion of the trustee be accumulated and added to trust principal at such time or times as the trustee deems proper. Notwithstanding anything to the contrary in this section of this instrument, the surviving settlor shall be paid all income to which he or she is entitled under the Power of Appointment Trust.

6.6    Administration of Generation-Skipping Trusts

The provisions of this section apply to any trust under this instrument that is created on the deceased settlor's death and in which there is property that is or may become subject to the federal generation-skipping transfer tax:

(a)    Allocation of Exemption to Part of Trust

On written notification by the deceased settlor's executor that the executor intends to allocate any part of the generation-skipping transfer tax exemption that is available to the deceased settlor under Internal Revenue Code Section 2631(a) to some but not all of the property in any trust to which this section applies, the trustee shall divide that trust into two separate trusts, to be designated as the Exempt Trust and the Nonexempt Trust. The Exempt Trust shall contain the share of the property of that trust consisting of a pecuniary amount equal in value to the amount of the

generation-skipping transfer tax exemption that the executor intends to allocate to the trust. The Exempt Trust shall have an inclusion ratio of zero (0) for federal generation-skipping transfer tax purposes. The Nonexempt Trust shall contain the balance of the property of that trust and shall have an inclusion ratio of one (1) for federal generation-skipping transfer tax purposes. The settlors intend that the executor then actually allocate the generation-skipping transfer tax exemption to the Exempt Trust and not to the Nonexempt Trust. The trustee shall not be liable for relying on the written instructions of the executor when acting in accordance with the provisions of this subsection.

(b)   Method of Allocation

In allocating assets between the Exempt Trust and the Nonexempt Trust for purposes of this section, the trustee shall allocate the trust assets in cash or in kind, or partly in each, on a pro rata or non pro rata basis, and in undivided interests or not. If the allocation is not made within 15 months from the date of the deceased settlors' death, the trustee shall pay interest, at the legal rate, from the date of the deceased settlors' death to the date of distribution. Assets shall be valued at their values on the date or dates of distribution.

(c)   Allocation or Nonallocation of Exemption to Entire Trust

Regardless of whether subsection (a) of this section applies, if the amount of the deceased settlor's generation-skipping transfer tax exemption actually allocated by the executor to a trust to which this section applies is equal to the value of the property of that trust so that the entire trust has an inclusion ratio of zero (0) for federal generation-skipping transfer tax purposes, the entire trust shall be referred to as the Exempt Trust. On the other hand, if no part of the deceased settlor's generation-skipping transfer tax exemption is actually allocated to the trust by the deceased settlor's executor so that the entire trust has an inclusion ratio of one (1) for federal generation-skipping transfer tax purposes (or if the deceased settlor is not the transferor of that trust for generation-skipping transfer tax purposes), the entire trust shall be referred to as the Nonexempt Trust.

(d)   Trust Distributions

The trustee may, but is not required to, administer the trusts under this instrument to which this section applies in such a manner that distributions made during the trust terms to "skip persons" (as defined in Internal Revenue Code Section 2613(a) or any equivalent successor statute) are made from Exempt Trusts, and distributions made during the trust terms to "non-skip persons" (as defined in Internal Revenue Code Section 2613(b) or any equivalent successor section) are made from Nonexempt Trusts.

(e)   Trustee's Power to Petition Court to Amend Nonexempt Trust

If the trustee determines that the burdens of generation-skipping transfer taxes, income taxes, and death taxes on a Nonexempt Trust, either settlor's estate, or the

beneficiaries of that trust would be reduced, the trustee may petition the court to amend the trust to grant to one or more trust beneficiaries who are non-skip persons in a generation below the deceased settlor a general testamentary power of appointment over all or a specified portion of that Nonexempt Trust. Any power to amend the trust is within the discretion of the court, and the preceding sentence shall not be construed to give the trustee any power that the trustee does not already have under California trust law to petition the court under the appropriate circumstances, nor shall it be construed to limit the power of the trustee or any beneficiary under California trust law to petition the court under the appropriate circumstances.

(f)    <u>Purpose of Section</u>

The purpose of this section is to allow the trustee to administer the trusts so as to decrease the amount of generation-skipping transfer taxes owed on transfers from the trusts. The trustee shall balance that consideration against any other tax and nontax considerations, and may disregard the generation-skipping transfer tax consequences to the extent that the trustee determines that doing so will allow the trustee to carry out the settlors' intentions in creating the trusts. All decisions of the trustee under this subsection are within the trustee's discretion.

(g)    <u>Amendment of Trust to Reflect Changes in Tax Law</u>

If, in the judgment of the executor or the trustee, at any time after the execution of this trust instrument, any statute, regulation, court decision, or administrative ruling imposes different or additional requirements on the trust in connection with the generation-skipping transfer tax the executor or the trustee may petition the court to amend the terms of the trust to meet those requirements and achieve the purpose of this section.

(h)    <u>Allocation of Exemption of Surviving Settlor to Nonexempt Trust</u>

If, on the death of the surviving settlor, (1) the surviving settlor is considered to be the transferor of any Nonexempt Trust established by this instrument for generation-skipping transfer purposes, and (2) the surviving settlor's executor allocates any part of the generation-skipping transfer tax exemption that is available to the surviving settlor under Internal Revenue Code section 2631(a) (or any equivalent successor section) to that Nonexempt Trust so that the entire trust then has an inclusion ratio of zero (0) for federal generation-skipping transfer tax purposes, that trust shall then be considered to be an Exempt Trust for purposes of this section.

(i)    <u>No Disqualification of Marital Deduction</u>

In no event may the trustee exercise any power under this section in a manner that will impair the marital deduction.

## ARTICLE SEVEN. TRUSTEE

7.1    <u>Successor Trustees</u>

(a)    <u>Remaining Initial Cotrustee Serves Alone</u>

If, while acting as cotrustees, either initial cotrustee is unable (by reason of death, incapacity, or any other reason), or unwilling to continue to act as a trustee, and no successor cotrustee has been designated under any other provision of this trust instrument, the remaining initial trustee thereafter shall continue to serve as sole trustee, with full power to continue the trust administration.

(b)    <u>Successor Trustees</u>

If the office of trustee becomes vacant, by reason of death, incapacity, or any other reason, and no successor trustee has been designated under any other provision of this trust instrument, the following, in the order of priority indicated, shall be trustee or cotrustees (as the case may be):

First:    Richard Bradley Ng, the settlor's grandson.

Second:    Brittany Yang Ng, wife of the settlor's grandson.

If all those named above are or become unable (by reason of death, incapacity, or any other reason) or unwilling to serve or continue to serve as successor trustee, a new trustee or set of cotrustees shall be appointed by majority vote of the beneficiaries of the trust who are then entitled to receive income under the trust, or who would be entitled to receive a distribution of principal from the trust if the trust were then terminating, and who then have the legal capacity to give such a vote. If any beneficiary who otherwise would be entitled to vote on appointment of a trustee under this section is a minor or is under a legal incapacity, then the custodial parent(s), guardian, or conservator of that beneficiary may vote on behalf of the beneficiary. If a majority of the beneficiaries are unable to agree on a new trustee or cotrustees, a new trustee or cotrustees may be appointed by the court.

(c)    <u>No Replacement of Cotrustees</u>

If, at any time when two or more persons or entities are serving as cotrustees, any one or more (but less than all) of them are unable or unwilling for any reason to continue to serve as cotrustees, and no successor cotrustee has been designated under any other applicable provisions of this trust instrument, no new cotrustee shall be appointed. Rather, the remaining cotrustee or cotrustees shall have full power to act as trustee or cotrustees and to continue the trust administration.

7.2    <u>General Trustee-Related Provisions</u>

(a)    <u>Settlors' Power to Designate Successor Trustees or Cotrustees</u>

At any time while both settlors are living, the settlors may designate either or both of the following for any trust created under this instrument:

(i)   Any suitable person or entity to act as a successor cotrustee if a cotrustee dies, becomes incapacitated, or is otherwise unable or unwilling to continue to act as cotrustee.

(ii)   One or more suitable persons or entities to act as a successor trustee, or as successor cotrustees, if the initial cotrustees die, become incapacitated, or are otherwise unable or unwilling to continue to act as cotrustees.

The powers specified in this section shall be exercisable only by both settlors acting jointly, unless one of the settlors is incapacitated or otherwise incapable of exercising this power, in which case the power may be exercised by the remaining settlor acting alone. Any designation under this section shall be made by a signed writing delivered to the person or entity designated as successor trustee or cotrustee. The settlors, acting jointly, may revoke, amend, or replace the written instrument designating the successor trustee or cotrustee at any time before a particular vacancy is filled. If more than one designation is made under this section, only the most recent designation shall be valid.

(b)   Power of Surviving Joint Settlor to Designate Successor Trustees or Cotrustees

Following the death of the deceased settlor, the surviving settlor may at any time designate one or more suitable persons or entities to act as trustee or cotrustees in the event that the trustee dies, becomes incapacitated, or is otherwise unable or unwilling to continue to act as trustee. This designation shall be made by a signed writing delivered to the person or entity designated as successor. The surviving settlor may revoke, amend, or replace the written instrument designating the successor trustee or cotrustee at any time before a particular vacancy is filled. If more than one designation is made under this section, only the most recent designation shall be valid. The power granted by this section shall only apply to the Survivor's Trust.

(c)   Definition of Trustee

Reference in this instrument to "the trustee" shall be deemed a reference to whoever is serving as trustee or cotrustees, and shall include alternate or successor trustees or cotrustees, unless the context requires otherwise.

(d)   Removal and Replacement of Trustee by Settlors

While both settlors are alive, the settlors shall have the power, at any time and for any reason, with or without cause, to remove any trustee acting under this instrument, and notwithstanding any other provision of this instrument, designate another trustee to replace the removed trustee. Removal shall be effected by giving a written notice of removal to the trustee to be removed and to the designated successor. The removal shall become effective on the delivery to the settlors of a

written acceptance of the trust by the successor trustee, and the settlors shall promptly notify the trustee being removed of the receipt of that acceptance.

(e)   Waiver of Bond

No bond or undertaking shall be required of any individual who serves as a trustee under this instrument.

(f)   Compensation of Individual Trustees

Each individual who is a trustee under this instrument shall be entitled to reasonable compensation for services rendered, payable without court order.

(g)   Procedure for Resignation

Any trustee may resign at any time, without giving a reason for the resignation, by giving written notice, at least thirty (30) days before the time the resignation is to take effect, to the settlors, if living, to any other trustee then acting, to any persons authorized to designate a successor trustee, to all trust beneficiaries known to the trustee (or, in the case of a minor beneficiary, to the parent or guardian of that beneficiary) and to the successor trustee. A resignation shall be effective on written acceptance of the trust by the successor trustee.

(h)   General Powers of Trustee

To carry out the purposes of the trusts created under this instrument, and subject to any limitations stated elsewhere in this instrument, the trustee shall have all of the following powers, in addition to all of the powers now or hereafter conferred on trustees by law:

(i)   With or without court authorization, sell (for cash or on deferred payments, and with or without security), convey, exchange, partition, and divide trust property; grant options for the sale or exchange of trust property for any purpose, whether the contract is to be performed or the option is to be exercised within or beyond the term of the trust; and lease trust property for any purpose, for terms within or extending beyond the expiration of the trust, regardless of whether the leased property is commercial or residential and regardless of the number of units leased.

(ii)   Engage in any transactions with the personal representative of the estate of either settlor that are in the best interest of any trusts created in this instrument.

(iii)   Manage, control, improve, and maintain all real and personal trust property.

(iv)   Subdivide or develop land; make or obtain the vacation of plats and adjust boundaries, or adjust differences in valuation on exchange or partition by giving or receiving consideration; and dedicate land or easements to public use with or without consideration.

(v)   Make ordinary or extraordinary repairs or alterations in buildings or other trust property, demolish any improvements, raze existing party walls or buildings, and erect new party walls or buildings, as the trustee deems advisable.

(vi)   Employ and discharge agents and employees, including but not limited to attorneys, accountants, investment and other advisers, custodians of assets, property managers, real estate agents and brokers, and appraisers, to advise and assist the trustee in the management of any trusts created under this trust instrument, and compensate them from the trust property.

(vii)   With respect to securities held in trust, exercise all the rights, powers, and privileges of an owner, including, but not limited to, the power to vote, give proxies, and pay assessments and other sums deemed by the trustee necessary for the protection of the trust property; participate in voting trusts, pooling agreements, foreclosures, reorganizations, consolidations, mergers, and liquidations, and, in connection therewith, deposit securities with and transfer title to any protective or other committee under such terms as the trustee deems advisable; exercise or sell stock subscription or conversion rights; and accept and retain as investments of the trust any securities or other property received through the exercise of any of the foregoing powers.

(viii) Hold securities or other trust property in the trustee's own name or in the name of a nominee, with or without disclosure of the trust, or in unregistered form, so that title may pass by delivery.

(ix)   Deposit securities in a securities depository that is either licensed or exempt from licensing.

(x)   Borrow money for any trust purpose from any person or entity, including one acting as trustee hereunder, on such terms and conditions as the trustee deems advisable, and obligate the trust for repayment; encumber any trust property by mortgage, deed of trust, pledge, or otherwise, whether for terms within or extending beyond the term of the trust, as the trustee deems advisable, to secure repayment of any such loan; replace, renew, and extend any such loan or encumbrance; and pay loans or other obligations of the trust deemed advisable by the trustee.

(xi)   Procure and carry, at the expense of the trust, insurance in such forms and in such amounts as the trustee deems advisable to protect the trust property against damage or loss, and to protect the trustee against liability with respect to third persons.

(xii)   Enforce any obligation owing to the trust, including any obligation secured by a deed of trust, mortgage, or pledge held as trust property, and purchase any property subject to a security instrument held as trust property at any sale under the instrument.

(xiii) Extend the time for payment of any note or other obligation held as an asset of, and owing to, the trust, including accrued or future interest, and extend the time for repayment beyond the term of the trust.

(xiv) Pay or contest any claim against the trust; release or prosecute any claim in favor of the trust; or, in lieu of payment, contest, release, or prosecution, adjust, compromise, or settle any such claim, in whole or in part, and with or without consideration.

(xv)  At trust expense, prosecute or defend actions, claims, or proceedings of whatever kind for the protection of the trust property and of the trustee in the performance of the trustee's duties, and employ and compensate attorneys, advisers, and other agents as the trustee deems advisable.

(i)    <u>Tax Powers</u>

The trustee shall have the power, in the trustee's sole discretion, to do any or all of the following acts:

(i)     to elect the alternate valuation date if an estate tax return is filed;

(ii)    to apply for any deferrals available to the estate under the federal estate tax law for the payment of estate taxes;

(iii)  to elect any item either as an income or estate tax deduction for any tax reporting purpose;

(iv)   to determine when a particular item will be deducted or reported as income.

In addition, the personal representative of the deceased settlor's estate, or the successor trustee of the deceased settlor's trust if no such personal representative has been appointed, shall have the discretion to file a federal estate tax return for the deceased settlor and to elect on such return that the surviving settlor may take into account the deceased settlor's Deceased Spousal Unused Exclusion Amount ("DSUEA"). If the personal representative or successor trustee elects not to file a federal estate tax return for this purpose, the surviving spouse may compel said personal representative or successor trustee to file such estate tax return to claim the DSUEA; provided, however, that the personal representative or successor trustee may only be compelled to file such return if the surviving spouse bears the cost of filing said estate tax return.

No person adversely affected by any of these choices is entitled to any reimbursement or adjustment, and neither the personal representative nor the successor trustee shall be required to make any adjustment between income and principal or in the amount of any property passing to any beneficiary as a result of any election under this provision. The preceding sentence is applicable in all events, including when the personal representative or successor trustee shall exercise any discretion the personal representative or successor trustee may hold to allocate the

benefits of such actions or elections among the various beneficiaries, even if the consequence of such actions or elections is to directly or indirectly prefer one beneficiary or group of beneficiaries over others.

(j)    Power to Retain Trust Property

The trustee shall have the power to retain property received into the trust at its inception or later added to the trust, as long as the trustee considers that retention in the best interests of the trust or in furtherance of the goals of the settlors in creating the trust, as determined from this trust instrument, but subject to the standards of the prudent investor rule as set forth in the California Uniform Prudent Investor Act, as amended from time to time.

(k)    Trustee's Power to Invest Property

Subject to the standards of the prudent investor rule as stated in the California Uniform Prudent Investor Act, as amended from time to time, the trustee shall have the power to invest and manage the trust assets as a prudent investor would, by considering the purposes, terms, distribution requirements, and other circumstances of the trust.

(l)    Power Over Unproductive Property

The trustee shall have the power to retain or acquire unproductive or underproductive property.

(m)   Power to Operate Business

The trustee shall have the power to hold and operate any business or enterprise that is or becomes trust property, on such terms and for such a time as the trustee, in the trustee's discretion, deems advisable; to purchase, acquire, invest in, or otherwise participate in, any business or other enterprise on behalf of the trust; or to sell, dissolve, liquidate, or terminate any such business. The trustee shall also have the power to incorporate, reorganize, or otherwise change the form of a business or enterprise that is part of the trust, through merger or consolidation of two or more enterprises or otherwise, and to participate in that business or enterprise as a sole proprietor, as a general or limited partner, as a shareholder, or in any other capacity. Any operation, sale, purchase, acquisition, investment in, or dissolution or liquidation of a business interest, in good faith, shall be at the risk of the trust, and without liability on the part of the trustee for any resulting losses. The trustee shall also have the power to contribute capital or loan money to the business or enterprise on such terms and conditions as the trustee deems advisable.

(n)    Power to Operate Farm or Ranch

The trustee shall have the power to continue to hold, operate, sell, purchase, acquire, invest in, or liquidate any farming or ranch property, or any interest in farming or ranching property, whether organized as a sole proprietorship, general or

limited partnership, corporation, or otherwise, on such terms and for such time as the trustee, in the trustee's discretion, deems advisable. Any such operation, sale, purchase, acquisition, investment, or liquidation, in good faith, shall be at the risk of the trust and without liability on the part of the trustee for any resulting losses. The trustee shall have all powers necessary or appropriate to carry out the management of such farming and ranching property. The trustee shall also have the power to incorporate any farming or ranching property, or any interest therein, and to hold the stock as a trust asset; to borrow money for any purpose related to the operation, or the acquisition or disposition, of any such farming or ranching interests; and to employ agents in the management and operation of that property. The net profits and losses from the farming and ranching operations conducted by the trust shall be computed in accordance with recognized methods of accounting for comparable activities. The net profits from these activities shall become trust income. The net losses from these activities shall not reduce other trust income for the fiscal or calendar year during which they occur, but shall be carried into subsequent fiscal or calendar years and reduce the net profits of the business for those years.

(o)   Power to Self-Deal

The trustee, acting as an individual or as a trustee of another trust not created by this trust instrument, shall have the power to perform the following acts with respect to the property of any trust under this trust instrument: purchase property from or sell property to the trust at fair market value; exchange property for trust property of equal value; lease property from or to the trust at fair rental value; lend or advance funds to the trust, with interest at then-prevailing rates, and receive security for the loans in any commercially reasonable form; and receive from any business in which the trust has an interest a reasonable salary and reimbursement of expenses while performing duties as a trustee. The trustee, acting as trustee of another trust established by the settlors or another trust established for the benefit of any one or more of the beneficiaries of the trust, shall have the power to borrow funds from the trust with interest at then-prevailing rates, and give security for the loans in any commercially reasonable form.

(p)   Powers Regarding Subchapter S Stock

If at any time the trust estate includes shares of stock in any corporations that have elected to be governed by the provisions of Subchapter S of Chapter 1 of Subtitle A of the Internal Revenue Code (IRC Section 1361 et seq., or any successor sections), then notwithstanding any other provision of this instrument, the trustee shall at all times manage those shares, and administer the trust estate, in a manner that will maintain the S corporation status. To satisfy this obligation, but without limiting the discretion of the trustee to take any action to protect the S corporation status, the trustee shall act as follows:

(i)   Allocation or Distribution to Permitted Shareholders

The trustee shall allocate or distribute shares of S corporation stock only to those trusts or those beneficiaries that are permitted to be shareholders of an S corporation.

(ii)   Qualified Subchapter S Trust Provisions

If shares of S corporation stock are allocated to any trust created under this instrument and that trust does not otherwise qualify as a permitted shareholder under Internal Revenue Code Section 1361, or any successor section, then notwithstanding any other provision of this instrument, that trust (or any portion of that trust containing S corporation stock) shall be administered so as to ensure that it is a Qualified Subchapter S Trust (QSST), an Electing Small Business Trust (ESBT), or some other form of trust that qualifies as a permitted shareholder under Internal Revenue Code Section 1361, or any successor section. The S corporation stock in each such trust shall be held in separate share trusts (within the meaning of Internal Revenue Code Section 663(c), or any successor section) for each beneficiary; and all other property in each trust shall be held in a separate trust, which shall continue to be administered in accordance with the terms of this instrument. With respect to the separate share trusts holding S corporation stock, the trustee shall make distributions of income and principal, and otherwise administer the trusts, to ensure that those trusts do not become ineligible shareholders of an S corporation. To the extent that the terms of this instrument are inconsistent with those separate share trusts qualifying as permitted shareholders of an S corporation, those terms shall be disregarded.

(iii)   Other Trustee Administrative Powers

The trustee shall have the power (1) to enter into agreements with other shareholders or with the corporation relating to transfers of S corporation stock or the management of the S corporation; and (2) to allocate amounts received, and the tax on undistributed income, between income and principal. During the administration of a trust holding S corporation stock, the trustee may allocate tax deductions and credits arising from ownership of S corporation stock between income and principal. In making those allocations, the trustee shall consider that the beneficiary is to have the enjoyment of the property at least equal to that ordinarily associated with an income interest.

(iv)   Beneficiary Agreement

The trustee shall not distribute any S corporation stock to any beneficiary unless, prior to that distribution, the beneficiary enters into a written agreement with the S corporation stating the following: (1) that the beneficiary will consent to any election to qualify the corporation as an S corporation; (2) that the beneficiary will not interfere with the S corporation maintaining its S corporation status; (3) that the beneficiary will not transfer the S corporation stock to any transferee who does not agree to execute a similar consent; (4) that the beneficiary will not transfer the stock in a manner that will cause a termination of S

corporation status under the then applicable federal and state tax law and regulations; and (5) that the beneficiary will join in any attempt to obtain a waiver from the Internal Revenue Service of a terminating event on the grounds of inadvertence if S corporation status is inadvertently terminated and the S corporation or any shareholder desires that S corporation status should continue.

(v)   Certificate to Bear Legend

If the trustee receives any shares of S corporation stock whose stock certificates bear a legend stating that the transfer, pledge, assignment, hypothecation, or other disposition of the stock is subject to the terms set forth in the preceding subsection, then the stock certificates shall also bear that legend when the trustee distributes those shares of S corporation stock to a beneficiary.

(vi)   No Disqualification of Marital Deduction

Any grant of power or discretion to the trustee under this section shall be void to the extent that the grant would cause the estate of the deceased settlor to lose all or part of the federal estate tax marital deduction, and in the event of an irreconcilable conflict between qualification of a trust as a permitted shareholder of an S corporation and qualification of that trust for the federal estate tax marital deduction, all of the S corporation's stock otherwise passing to that trust shall be distributed outright to the surviving settlor.

(q)   Retention of Family Residence

The trustee shall retain, in any trust or trusts created by this trust instrument, any interest in real property used by the settlors as their principal residence at the time of the deceased settlor's death ("the family residence"), and shall deal with the family residence in accordance with the following terms and conditions:

(i)   During his or her lifetime, the surviving settlor shall have the right to occupy the family residence (or any substitute residence or residential property purchased as provided in this section of the trust instrument) free of any rent.

(ii)   The trustee shall pay as much of the mortgage or trust deed payments, property taxes, assessments, insurance, maintenance, and ordinary repairs on the family residence (or any substitute residence or residential property purchased as provided in this section of the trust instrument) as corresponds to the trust's proportionate interest in the same. The trustee shall make those payments out of income or principal of the trust or trusts in accordance with the principles applicable to the charging of payments under California law, but in no event shall payment be made in a manner that disqualifies any part of the trust, that would otherwise so qualify, for the federal estate tax marital deduction.

(iii)   The surviving settlor, at his or her option, shall have the right to advise the trustee in writing that he or she no longer wishes to occupy the family residence and to direct the trustee to sell it, or any interest therein. In deciding on the terms

and conditions relating to any sale, the trustee shall take into account all relevant factors, including, but not limited to, the intent of the settlors that no sale be made in a "forced sale" situation (other than at the direction of the surviving settlor) or at a time when, because of high mortgage rates or otherwise, the residential real estate market is depressed. In selling the family residence, the trustee may dispose of it on such terms as the trustee deems desirable, including an installment sale or any other desirable method of disposing of the family residence, provided that if the sale is for consideration other than cash, the purchaser's obligation shall be secured by a first deed of trust. In the event of a sale, the surviving settlor may direct the trustee in writing to apply the proceeds of the sale to the purchase of a substitute residence or residential property, of comparable or lesser value, to be selected by the surviving settlor, or to reinvest the proceeds in any manner that he or she may direct, provided that any such investments satisfy normal fiduciary standards of prudence and safety, and to use the income from reinvestment to pay the rental or lease payments on another residence or residential property, to be selected by the surviving settlor. Any net trust accounting income from any such investments, in excess of the trust share of the rental costs and any other expenses of trust administration, shall be added to the other trust income and distributed in accordance with the relevant provisions of the trust or trusts as set forth in Article Six of this trust instrument.

(iv)   On the death of the surviving settlor, the trust interest in either the family residence, any proceeds remaining from the sale of the family residence, or any substitute residence or residential property purchased by the trustee with any proceeds of sale of the family residence, shall be distributed in accordance with the applicable provisions of the trust or trusts in which the interest or interests are held, as set forth in Article Six of this trust instrument.

(r)   <u>No Duty to Segregate</u>

Each trust created under this instrument shall constitute a separate trust and be administered accordingly; however, the assets of all of the trusts may be combined for bookkeeping purposes and held for the trust beneficiaries without physical division into separate trusts until time of distribution.

(s)   <u>Power to Divide or Combine Trusts</u>

The trustee shall have the power to divide a single trust into separate shares, each to be administered in accordance with the terms and conditions of the single trust from which they were created, when the trustee, in the trustee's discretion, determines that division is desirable or advisable in view of tax considerations (including considerations related to the income tax, the gift tax, the estate tax, or the generation-skipping transfer tax) or other objectives of the trusts and their beneficiaries. The trustee shall not be required to make a physical segregation or division of the various trust shares created under this trust instrument, except as segregation or division may be required by reason of the termination and distribution of any of the trusts, but the trustee shall keep separate accounts and records for

different undivided interests. The trustee, in the trustee's discretion, shall have the further power to combine two or more trusts having substantially the same terms into a single trust for purposes of administration, when tax or other factors indicate that such combination would be desirable or advisable.

(t)    <u>Trustee's Power to Determine Income and Principal</u>

Unless otherwise specifically provided in this instrument, the determination of all matters with respect to what is principal and income of any trust under this instrument and the apportionment and allocation of receipts, expenses, and other charges between principal and income shall be governed by the provisions of the California Uniform Principal and Income Act from time to time existing. The trustee in the trustee's discretion shall determine any matter not provided for either in this instrument or in the California Uniform Principal and Income Act.

(u)    <u>Early Termination of Trusts</u>

The trustee shall have the power, in the trustee's discretion, to terminate any trust created under this trust instrument whenever the fair market value of the trust falls below one hundred thousand dollars ($100,000.00), or becomes so small in relation to the costs of administration as to make continuing administration uneconomical, or contrary to the purposes of the trust. On termination, the trustee shall distribute the principal and any accrued or undistributed net income to the income beneficiaries in proportion to their shares of the income. If no fixed amount of income is payable to specific beneficiaries, the trustee shall distribute the principal and any accrued or undistributed net income in equal shares to those beneficiaries who would then be entitled to income payments from the trust.

(v)    <u>Division or Distribution in Cash or Kind</u>

In order to satisfy a pecuniary gift or to distribute or divide trust assets into shares or partial shares, the trustee may distribute or divide those assets in kind, or divide undivided interests in those assets, or sell all or any part of those assets and distribute or divide the property in cash, in kind, or partly in cash and partly in kind. Property distributed to satisfy a pecuniary gift under this instrument shall be valued at its fair market value at the time of distribution.

(w)    <u>Payments to Legally Incapacitated Persons</u>

If at any time any trust beneficiary is a minor, or it appears to the trustee that any trust beneficiary is incapacitated, incompetent, or for any other reason not able to receive payments or make intelligent or responsible use of the payments, then the trustee, in lieu of making direct payments to the trust beneficiary, may make payments to the beneficiary's conservator or guardian; to the beneficiary's custodian under the Uniform Gifts to Minors Act or Uniform Transfers to Minors Act of any state; to the beneficiary's custodian under the California Uniform Transfers to Minors Act until the beneficiary reaches the age of twenty-five (25); to one or more suitable persons as the trustee deems proper, such as a relative of or a person residing with the

beneficiary, to be used for the beneficiary's benefit; to any other person, firm, or agency for services rendered or to be rendered for the beneficiary's assistance or benefit; or to accounts in the beneficiary's name with financial institutions. If there is no custodian then-serving or nominated to serve by the settlor for a beneficiary, the personal representative or trustee, as the case may be, shall designate the custodian. The receipt of payments by any of the foregoing shall constitute a sufficient acquittance of the trustee for all purposes.

(x)    Trustee's Liability

No trustee shall be liable to any interested party for acts or omissions of that trustee, except those resulting from that trustee's willful misconduct or gross negligence. This standard shall also apply regarding a trustee's liability for the acts or omissions of any cotrustee, predecessor trustee, or agent employed by the trustee.

(y)    Written Notice to Trustee

Until the trustee receives written notice of any death or other event on which the right to payments from any trust may depend, the trustee shall incur no liability for disbursements made in good faith to persons whose interests may have been affected by that event.

(z)    Duty to Account

The trustee shall not be required to render periodic accounts to any person, but shall render accounts at the termination of a trust and on a change of trustee to the persons and in the manner required by law. When a predecessor trustee has failed to render accounts as required under this provision, the successor trustee may, but need not, render accounts for such period with reasonable efforts without incurring any additional liability for acts of a predecessor trustee, other than as already provided under California law. This provision is intended to permit the successor trustee to render accounts for the predecessor without creating any additional duty to investigate or to account. Nonetheless, if in the course of rendering accounts left undone by the predecessor trustee, the successor trustee obtains knowledge of a situation that may constitute a breach of trust committed by the predecessor trustee; the successor trustee shall deal with such knowledge in accordance with the successor trustee's fiduciary duties and powers.

(aa)    Cotrustee May Delegate Acts to Other Cotrustee

Any cotrustee may, from time to time, delegate to the other cotrustee routine acts of trust administration and may establish bank or other accounts for the trust that will honor the signature of one or of either cotrustee.

# ARTICLE EIGHT. CONCLUDING PROVISIONS

## 8.1   Perpetuities Savings Clause

Notwithstanding any other provision of this instrument, every trust created by this instrument or by the exercise of any power of appointment created by this instrument shall terminate no later than twenty-one (21) years after the death of the last survivor of the settlors and their issue who are alive at the creation of the trust. For purposes of this perpetuities savings clause, a trust shall be deemed to have been created on the date the trust becomes irrevocable or the date of the death of the surviving settlor, whichever occurs first. If a trust is terminated under this section, the trustee shall distribute all of the principal and undistributed income of the trust to the income beneficiaries of the trust in the proportion in which they are entitled (or eligible, in the case of discretionary payments) to receive income immediately before the termination. If that proportion is not fixed by the terms of the trust, the trustee shall distribute all of the trust property to the persons then entitled or eligible to receive income from the trust outright in a manner that, in the trustee's opinion, will give effect to the intent of the settlors in creating the trust. The trustee's decision is to be final and incontestable by anyone.

## 8.2   Simultaneous Death

If the settlors die under circumstances in which the order of their deaths cannot be established by clear and convincing evidence, each settlor shall be deemed to have survived the other, and this instrument shall be construed accordingly. If any other beneficiary under this instrument and either or both settlors die under circumstances in which the order of their deaths cannot be established by clear and convincing evidence, the settlor or settlors shall be deemed to have survived the beneficiary, and this instrument shall be construed accordingly.

## 8.3   Survivorship Requirement

For purposes of this instrument, a beneficiary shall be deemed not to have survived a settlor if that beneficiary dies within ninety (90) days after the death of that settlor.

### 8.4    No-Contest Clause

If any beneficiary under this instrument, singularly or in combination with any other person or persons, directly or indirectly, and without probable cause challenges the validity of this instrument on any of the grounds listed below, then the right of that person to take any interest given to him or her by this instrument shall be void, and any gift or other interest in the trust property to which the beneficiary would otherwise have been entitled shall pass as if he or she had predeceased the settlors:

    (a)    Forgery;

    (b)    Lack of due execution;

    (c)    Lack of capacity;

    (d)    Menace, duress, fraud, or undue influence;

    (e)    Revocation pursuant to the terms of this instrument or applicable law;

    (f)    Disqualification of a beneficiary who is a "disqualified person" as described in California Probate Code section 21350 or applicable successor statute.

### 8.5    Definition of Deceased Settlor and Surviving Settlor

In this instrument, the first settlor to die is referred to as the "deceased settlor" and the other settlor is referred to as the "surviving settlor."

### 8.6    Definition of Education

As used in this instrument, the term "education" refers to the following:

    (a)    Education at public or private elementary, junior high, middle, or high schools, including boarding schools;

    (b)    Undergraduate, graduate, and postgraduate study in any field, whether or not of a professional character, in colleges, universities, or other institutions of higher learning;

(c)     Specialized formal or informal training in music, the stage, the handicrafts, or the arts, whether by private instruction or otherwise; and

(d)     Formal or informal vocational or technical training, whether through programs or institutions devoted solely to vocational or technical training, or otherwise.

8.7     Number and Gender

As used in this instrument, references in the masculine gender shall be deemed to include the feminine and neuter genders, and vice versa, and references to the singular shall be deemed to include the plural, and vice versa, wherever the context so permits.

8.8     Captions

The captions appearing in this instrument are for convenience of reference only, and shall be disregarded in determining the meaning and effect of the provisions of this instrument.

8.9     Severability Clause

If any provision of this instrument is invalid, that provision shall be disregarded, and the remainder of this instrument shall be construed as if the invalid provision had not been included.

8.10    California Law to Apply

All questions concerning the validity, interpretation, and administration of this instrument, including any trusts created under this instrument, shall be governed by the laws of the State of California, regardless of the domicile of any trustee or beneficiary.

8.11    Distribution to Issue

Whenever a division of property is specified to be made under this instrument among the issue of an individual in the manner set forth in California Probate Code Section 240, the distribution shall be made as described in this section. The individual is referred to in this section as the Designated Ancestor. The first division shall be made at the generation of issue with members who survive the Designated Ancestor that is nearest in degree to the Designated Ancestor. The property shall be divided into as many equal shares as there are members of that

generation who survive the Designated Ancestor plus deceased members of that generation who leave issue who survive the Designated Ancestor. Each member of that generation who survives the Designated Ancestor shall receive one such equal share. The equal share of each deceased member of that generation who leaves issue who survive the Designated Ancestor shall in turn be divided among that deceased member's issue who survive the Designated Ancestor in the manner described in this section as if the deceased member were the Designated Ancestor as to that share.

## ARTICLE NINE. SIGNATURE AND EXECUTION

9.1   Execution

We certify that we have read the foregoing declaration of trust and that it correctly states the terms and conditions under which the trust estate is to be held, administered, and distributed. As settlors of the trusts created by this declaration of trust, we approve this declaration of trust in all particulars, and agree to be bound by its terms and conditions. As trustees of the trusts created by this declaration of trust, we approve this declaration of trust in all particulars, and agree to be bound by its terms and conditions.

Executed on April 19, 2017, at Sacramento, California.

SETTLORS-TRUSTEES

_____
Richard Ng

_____
Mary A. Ng

# CALIFORNIA ALL- PURPOSE CERTIFICATE OF ACKNOWLEDGMENT

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California _____ }

County of _Sacramento_ _____ }

On _4-19-17_ _____ before me, _Amy Dare, Notary Public_ ,
(Here insert name and title of the officer)

personally appeared _Richard Ng_ _____
who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

_(signature)_
Notary Public Signature

(Notary Public Seal)

**AMY DARE**
Commission No. 2147845
NOTARY PUBLIC-CALIFORNIA
SACRAMENTO COUNTY
My Comm. Expires APRIL 27, 2020

---

## ADDITIONAL OPTIONAL INFORMATION

### DESCRIPTION OF THE ATTACHED DOCUMENT

_Revocable Trust_
(Title or description of attached document)

_____
(Title or description of attached document continued)

Number of Pages _____ Document Date_____

### CAPACITY CLAIMED BY THE SIGNER
☐ Individual (s)
☐ Corporate Officer

_____
(Title)
☐ Partner(s)
☐ Attorney-in-Fact
☐ Trustee(s)
☐ Other _____

2015 Version www.NotaryClasses.com 800-873-9865

### INSTRUCTIONS FOR COMPLETING THIS FORM
*This form complies with current California statutes regarding notary wording and, if needed, should be completed and attached to the document. Acknowledgments from other states may be completed for documents being sent to that state so long as the wording does not require the California notary to violate California notary law.*

- State and County information must be the State and County where the document signer(s) personally appeared before the notary public for acknowledgment.
- Date of notarization must be the date that the signer(s) personally appeared which must also be the same date the acknowledgment is completed.
- The notary public must print his or her name as it appears within his or her commission followed by a comma and then your title (notary public).
- Print the name(s) of document signer(s) who personally appear at the time of notarization.
- Indicate the correct singular or plural forms by crossing off incorrect forms (i.e. he/she/they, is /are ) or circling the correct forms. Failure to correctly indicate this information may lead to rejection of document recording.
- The notary seal impression must be clear and photographically reproducible. Impression must not cover text or lines. If seal impression smudges, re-seal if a sufficient area permits, otherwise complete a different acknowledgment form.
- Signature of the notary public must match the signature on file with the office of the county clerk.
  - ❖ Additional information is not required but could help to ensure this acknowledgment is not misused or attached to a different document.
  - ❖ Indicate title or type of attached document, number of pages and date.
  - ❖ Indicate the capacity claimed by the signer. If the claimed capacity is a corporate officer, indicate the title (i.e. CEO, CFO, Secretary).
- Securely attach this document to the signed document with a staple.

# CALIFORNIA ALL- PURPOSE
# CERTIFICATE OF ACKNOWLEDGMENT

A notary public or other officer completing this certificate verifies only the identity
of the individual who signed the document to which this certificate is attached,
and not the truthfulness, accuracy, or validity of that document.

State of California _____ }

County of Sacramento _____ }

On April 19 2017 before me, Amy Dare, Notary Public _____,
(Here insert name and title of the officer)

personally appeared Mary A. Ng _____
who proved to me on the basis of satisfactory evidence to be the person(s) whose
name(s) is/are subscribed to the within instrument and acknowledged to me that
he/she/they executed the same in his/her/their authorized capacity(ies), and that by
his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of
which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that
the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

_____
Notary Public Signature                    (Notary Public Seal)

AMY DARE
Commission No. 2147845
NOTARY PUBLIC-CALIFORNIA
SACRAMENTO COUNTY
My Comm. Expires APRIL 27 2020

---

## ADDITIONAL OPTIONAL INFORMATION

DESCRIPTION OF THE ATTACHED DOCUMENT

Revocable Trust
(Title or description of attached document)

_____
(Title or description of attached document continued)

Number of Pages _____ Document Date_____

CAPACITY CLAIMED BY THE SIGNER
☐ Individual (s)
☐ Corporate Officer
_____
(Title)
☐ Partner(s)
☐ Attorney-in-Fact
☐ Trustee(s)
☐ Other _____

## INSTRUCTIONS FOR COMPLETING THIS FORM
*This form complies with current California statutes regarding notary wording and,
if needed, should be completed and attached to the document. Acknowledgments
from other states may be completed for documents being sent to that state so long
as the wording does not require the California notary to violate California notary
law.*

- State and County information must be the State and County where the document
  signer(s) personally appeared before the notary public for acknowledgment.
- Date of notarization must be the date that the signer(s) personally appeared which
  must also be the same date the acknowledgment is completed.
- The notary public must print his or her name as it appears within his or her
  commission followed by a comma and then your title (notary public).
- Print the name(s) of document signer(s) who personally appear at the time of
  notarization.
- Indicate the correct singular or plural forms by crossing off incorrect forms (i.e.
  he/she/they, is /are ) or circling the correct forms. Failure to correctly indicate this
  information may lead to rejection of document recording.
- The notary seal impression must be clear and photographically reproducible.
  Impression must not cover text or lines. If seal impression smudges, re-seal if a
  sufficient area permits, otherwise complete a different acknowledgment form.
- Signature of the notary public must match the signature on file with the office of
  the county clerk.
    ❖ Additional information is not required but could help to ensure this
      acknowledgment is not misused or attached to a different document.
    ❖ Indicate title or type of attached document, number of pages and date.
    ❖ Indicate the capacity claimed by the signer. If the claimed capacity is a
      corporate officer, indicate the title (i.e. CEO, CFO, Secretary).
- Securely attach this document to the signed document with a staple.

2015 Version www.NotaryClasses.com 800-873-9865

## SCHEDULE OF COMMUNITY PROPERTY ASSETS

1.    A one-half (1/2) undivided interest in the real property commonly known as 4840 Kipling Drive, Carmichael, California 95608.

2.    Furniture, furnishings, antiques, jewelry, automobiles, and other personal effects of the settlors located at 4840 Kipling Drive, Carmichael, California 95608.

3.    Wells Fargo Checking/Savings Account (#2166037689)

4.    Fidelity Accounts:

        Y97-086608

        Z47-938636

5.    USAA Savings Account (#45138125)

6.    Sun Life Assurance Life Insurance Policy (#UB8126853)

7.    American Armed Forces Mutual Aid Accounts:

        31353XQL

        3153-4X0L

        3153-3X0L

8.    Delaware Life Insurance Company Annuity (#505405600071952)

## DISPOSITION OF PERSONAL EFFECTS OF RICHARD NG AND MARY A. NG

The trustee shall distribute the following described personal effects to the beneficiary named below immediately upon the death of the Surviving Settlor, unless a different time for such distribution is clearly indicated. No gift described below shall reduce the share of the Trust Property otherwise payable to any beneficiary unless such intent is clearly indicated in these instructions.

### DESCRIPTION OF ITEM(S)                                    BENEFICIARY

- 
- 
- 
- 
- 
- 
- 
- 
- 
- 
- 
- 
- 
- 
- 
- 
- 
- 
-

# EXHIBIT C

CERTIFICATION OF VITAL RECORD

# COUNTY OF SACRAMENTO
## DEPARTMENT OF HEALTH SERVICES

3052020253652    STATE FILE NUMBER

### CERTIFICATE OF DEATH

3202034011112   LOCAL REGISTRATION NUMBER

| 1. NAME OF DECEDENT—FIRST (Given) | MIDDLE | LAST |
|---|---|---|
| MARY | ANN | NG |

AKA/ALSO KNOWN AS – Include FULL AKA (FIRST, MIDDLE, LAST)

| 4. DATE OF BIRTH mm/dd/ccyy | 5. AGE Yrs. | 6. SEX |
|---|---|---|
| 05/04/1933 | 87 | F |

| 7. BIRTH STATE/FOREIGN COUNTRY | 10. SOCIAL SECURITY NUMBER | 12. MARITAL STATUS | 8. DATE OF DEATH mm/dd/ccyy | 9. HOUR (24 Hours) |
|---|---|---|---|---|
| NY | 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 | MARRIED | 10/29/2020 | 1140 |

| 16. EDUCATION | 17. DECEDENT HISPANIC/LATINO(a) | 18. RACE |
|---|---|---|
| SOME COLLEGE | NO | CAUCASIAN, ITALIAN |

| 19. USUAL OCCUPATION | 20. KIND OF BUSINESS OR INDUSTRY | 21. YEARS IN OCCUPATION |
|---|---|---|
| SECRETARY | GOVERNMENT | 40 |

| 22. DECEDENT'S RESIDENCE | | |
|---|---|---|
| 4840 KIPLING DRIVE | | |
| CARMICHAEL | SACRAMENTO | 95608 | CA |

| 26. INFORMANT'S NAME, RELATIONSHIP | 27. INFORMANT'S MAILING ADDRESS |
|---|---|
| LISA NG, DAUGHTER | 4840 KIPLING DRIVE, CARMICHAEL, CA 95608 |

| 28. NAME OF SURVIVING SPOUSE—FIRST | MIDDLE | LAST (BIRTH NAME) |
|---|---|---|
| RICHARD | JOSEPH | |

| 31. NAME OF FATHER/PARENT—FIRST | | | 34. BIRTH STATE |
|---|---|---|---|
| MARIA | | CARFARO | ITALY |

| 35. NAME OF MOTHER/PARENT—FIRST | | | 37. BIRTH STATE |
|---|---|---|---|
| | | VITALE | ITALY |

| 38. DISPOSITION DATE | | 39. PLACE OF FINAL DISPOSITION | 40. LICENSE NUMBER |
|---|---|---|---|
| 11/16/2020 | | SACRAMENTO VALLEY NATIONAL CEMETERY | |
| BU | 5810 MIDWAY ROAD, DIXON, CA 95620 | |

| 42. TYPE OF DISPOSITION(S) | | 41. SIGNATURE OF EMBALMER | LICENSE NUMBER |
|---|---|---|---|
| BU | | | EMB9494 |

| 44. NAME OF FUNERAL ESTABLISHMENT | | | 43. LICENSE NUMBER | 45. DATE |
|---|---|---|---|---|
| NICOLE LEWIS & HERBERGER FUNERAL HOME | | FD355 | OLIVIA KAINE MD | 11/11/2020 |

| 101. PLACE OF DEATH | 103. FACILITY ADDRESS OR LOCATION WHERE FOUND (Street and number, or location) | OTHER (specify) |
|---|---|---|
| OWN RESIDENCE | 4840 KIPLING DRIVE | |
| SACRAMENTO | | CARMICHAEL |

| 107. CAUSE OF DEATH | | |
|---|---|---|
| IMMEDIATE CAUSE | END STAGE RENAL DISEASE | MOS |
| | HYPERTENSION | YEARS |

111. OTHER SIGNIFICANT CONDITIONS CONTRIBUTING TO DEATH BUT NOT RESULTING IN THE UNDERLYING CAUSE GIVEN IN 107
NONE

112. WAS OPERATION PERFORMED FOR ANY CONDITION IN ITEM 107 OR 111?
NONE

| 114. I CERTIFY... | | 115. SIGNATURE AND TITLE OF CERTIFIER | |
|---|---|---|---|
| 10/26/2020 | 10/29/2020 | CRAIG NAOSHI TSUBOI M.D. | G76605 | 11/06/2020 |

116. TYPE ATTENDING PHYSICIAN'S NAME, MAILING ADDRESS, ZIP CODE
CRAIG NAOSHI TSUBOI M.D.
SUTTER CARE AT HOME 400 PLUMAS BLVD, YUBA CITY, CA 95991

| STATE REGISTRAR | A | B | C | D | E | FAX AUTH# | CENSUS TRACT |
|---|---|---|---|---|---|---|---|
| | | | | | | | |

*01001100471631 1*

### CERTIFIED COPY OF VITAL RECORDS
STATE OF CALIFORNIA, COUNTY OF SACRAMENTO

This is a true and exact reproduction of the document officially registered
and placed on file with Sacramento County Department of Health Services.

DATE ISSUED   November 16 2020

*001915692*

OLIVIA KAANE, MD
LOCAL REGISTRAR

This copy is not valid unless prepared on an engraved border, displaying the date, seal and signature of the Registrar.



ANY ALTERATION OR ERASURE VOIDS THIS CERTIFICATE

# EXHIBIT D



**Sun Life Assurance Company of Canada**
**One Sun Life Executive Park**
**Wellesley Hills, MA 02481**

31L

16

Issued By: Sun Life Assurance Company of Canada

Check number: 44039358
Check date: December 24, 2020
Reference number: UB8126853

MARY NG IRREVOCABLE TRUST, DATED APRIL 7, 1987
655 UNIVERSITY AVE # 230
SACRAMENTO, CA 95825

| Description | Amount |
|---|---|
| FACE AMOUNT | $225,000.00 |
| ALLOWED INTEREST | $7,221.58 |
| TOTAL | $232,221.58 |

Date: December 24, 2020
Reference number: UB8126853
Check number: 0044039358
Sun Life Financial®
SSO-937
X 213

The sum of
*TWO HUNDRED AND THIRTY-TWO THOUSAND TWO HUNDRED AND TWENTY-ONE DOLLARS AND FIFTY-EIGHT CENTS***

Pay to the order of:
MARY NG IRREVOCABLE TRUST, DATED APRIL 7, 1987
655 UNIVERSITY AVE # 230
SACRAMENTO, CA 95825

$**232,221.58**

Sun Life Assurance Company of Canada

By

JP Morgan Chase Bank, N.A.
Syracuse, NY 13206



⑈004403935⑈ ⑆021309379⑈ 60⑈ 2 22235⑈

# EXHIBIT E

**Sutter Medical Group**
Affiliated with Sutter Medical Foundation

January 7, 2021

Re:Richard Ng
Date of Birth: 6/29/1928

To Whom It May Concern,

Richard Ng is under my care at the Neuroscience Division of Sutter Medical Group.  Richard Ng lacks capacity to make sound decisions regarding his financial and medical care.  If you have any questions regarding this matter please contact my office

Sincerely,

Jacqueline V. Tran, MD
2800 L Street, Suite 500
Sacramento, CA 95816
Phone: (916) 454-6850
Fax: (916) 454-3208





**Sutter Medical Group**
Affiliated with Sutter Medical Foundation

1/15/2021

To Whom It May Concern:

RE: Richard Ng
DOB: 6/29/1928

I am Richard Ng's primary care doctor and have been caring for him since October 2016. This letter is to certify that Mr. Ng lacks the mental capacity to make legal, financial and medical decisions due to his dementia and related memory loss.

Sincerely,

Melissa L Lichte, MD 1/15/2021 3:33 PM

*Primary Care , 1201 Alhambra Blvd, Suite# 330, Sacramento, CA 95816, (916) 731-7770*

This letter was initially viewed by Richard Ng at 1/27/2021 4:52 PM.

**DE-120**

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* | FOR COURT USE ONLY |
|---|---|

Michael G. Abrate
SBN 261543
655 University Avenue, Suite 230
Sacramento, CA 95825

TELEPHONE NO.: 916-550-2688   FAX NO. *(Optional):*
E-MAIL ADDRESS *(Optional):* mike@abrateandolsen.com
ATTORNEY FOR *(Name):* Richard Bradley Ng (Petitioner)

SUPERIOR COURT OF CALIFORNIA, COUNTY OF Sacramento
STREET ADDRESS: 3341 Power Inn Road
MAILING ADDRESS: 3341 Power Inn Road
CITY AND ZIP CODE: Sacramento, CA 95826
BRANCH NAME: William R. Ridgeway Family Relations (Probate)

☐ ESTATE OF *(Name):*  ✓ IN THE MATTER OF *(Name):*
The Ng Family Trust

☐ DECEDENT  ✓ TRUST  ☐ OTHER

**NOTICE OF HEARING—DECEDENT'S ESTATE OR TRUST**

CASE NUMBER:
34-2021-00299059

*A TRUE COPY ATTEST — Process Server & Disinterested Person* 8/31/2021

**This notice is required by law.**
**This notice does not require you to appear in court, but you may attend the hearing if you wish.**

1. NOTICE is given that *(name):* Richard Bradley Ng
*(representative capacity, if any):* Successor Trustee
has filed *(specify):* *

A "PETITION TO DETERMINE OWNERSHIP OF ESTATE PROPERTY AND FOR ORDER AUTHORIZING AND DIRECTING TRUSTEE TO TRANSFER ESTATE PROPERTY"
[Probate Code §850(a)(3)(B) and §17200] Any person interested in the property may file a response to the petition. The "property" described above includes:
1) Sun Life Assurance Life Insurance Policy (#UB8126853)

2. You may refer to the filed documents for more information. *(Some documents filed with the court are confidential.)*

3. A HEARING on the matter will be held as follows:

   a. Date: November 4, 2021   Time: 11:00 am   Dept.: 129   Room:

   b. Address of court ✓ shown above  ☐ is *(specify):*

Assistive listening systems, computer-assisted real-time captioning, or sign language interpreter services are available upon request if at least 5 days notice is provided. Contact the clerk's office for *Request for Accommodations by Persons With Disabilities and Order* (form MC-410). (Civil Code section 54.8.)

* Do **not** use this form to give notice of a petition to administer estate (see Prob. Code, § 8100 and form DE-121) or notice of a hearing in a guardianship or conservatorship (see Prob. Code, §§ 1511 and 1822 and form GC-020).

Page 1 of 2

Form Adopted for Mandatory Use
Judicial Council of California
DE-120 [Rev. July 1, 2005]

**NOTICE OF HEARING—DECEDENT'S ESTATE OR TRUST**
**(Probate—Decedents' Estates)**

Probate Code §§ 851, 1211, 1215, 1216, 1230, 17100
www.courtinfo.ca.gov

**DE-120(P)**

| ESTATE OF *(Name):*  ☒  IN THE MATTER OF *(Name):* | CASE NUMBER: |
|---|---|
| The Ng Family Trust | 34-2021-00299059 |

☐ DECEDENT  ☐ TRUST  ☐ OTHER

### PROOF OF PERSONAL SERVICE OF NOTICE OF HEARING—DECEDENT'S ESTATE OR TRUST

*(Attach a separate completed and signed copy of this form or other proof of personal service to Notice of Hearing—Decedent's Estate or Trust for each person who personally served a copy of the Notice.)*

1. I am over the age of 18 and not a party to this cause.

2. I served the attached *Notice of Hearing—Decedent's Estate or Trust* by personally delivering a copy to each person listed below at the address and on the date and time indicated below.

3. ☒ I served with the attached *Notice of Hearing—Decedent's Estate or Trust* a copy of the petition or other document referred to in the Notice.

4. *I am (check all that apply):*
   a. ☒ not a registered California process server.
   b. ☐ a California sheriff or marshal.
   c. ☐ a registered California process server.
   d. ☐ an employee or independent contractor of a registered California process server.
   e. ☐ exempt from registration (Bus. & Prof. Code, § 22350(b)).

5. My name, address, telephone number, and, if applicable, county of registration and number, are *(specify):*

---

### NAME OF EACH PERSON PERSONALLY SERVED, ADDRESS WHERE SERVED, AND DATE AND TIME SERVICE WAS MADE

| Name | Address where served *(number, street, city, and state)* | Date and time service made |
|---|---|---|
| 1. | | Date: _____ Time: _____ |
| 2. | | Date: _____ Time: _____ |
| 3. | | Date: _____ Time: _____ |
| 4. | | Date: _____ Time: _____ |
| 5. | | Date: _____ Time: _____ |
| 6. | | Date: _____ Time: _____ |

☐ List of names and addresses of persons personally served by the undersigned continued on an attachment. *(You may use Attachment to Notice of Hearing Proof of Personal Service, form DE-120(PA)/GC-020(PA), for this purpose.)*

| **I declare** under penalty of perjury under the laws of the State of California that the foregoing is true and correct. | **(For California sheriff or marshal use only)** **I certify** that the foregoing is true and correct |
|---|---|
| Date: _____ | Date: _____ |
| ▶ _____ (SIGNATURE) | ▶ _____ (SIGNATURE) |

Page 1 of 1

Form Approved for Optional Use
Judicial Council of California
DE-120(P) [New July 1, 2005]

### PROOF OF PERSONAL SERVICE OF NOTICE OF HEARING—DECEDENT'S ESTATE OR TRUST
**(Probate—Decedents' Estates)**

Probate Code, §§ 851, 1216, 1264
*www.courts.ca.gov*

**For your protection and privacy, please press the Clear This Form button after you have printed the form.**

 Print this form | Save this form | Clear this form